UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FAR NORTHWEST DEVELOPMENT CO., LLC, and FARAMARZ GHODDOUSSI,<br><br>Plaintiffs,<br><br>v.<br><br>COMMUNITY ASSOCIATION OF UNDERWRITERS OF AMERICA, INC., *et al.*,<br><br>Defendants. | CASE NO. C05-2134RSM<br><br>ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING PLAINTIFFS' CLAIMS |

## **I. INTRODUCTION**

This matter comes before the Court on the Somerset Village Townhomes Condominium Association's ("Association")[1] Motion for Summary Judgment regarding defendants Westport Insurance Corporation's ("Westport") and Community Association Underwriters' ("CAU") liability for the underlying settlement amount, and defendants' Cross-Motion for Summary Judgment regarding coverage for plaintiff Faramarz Ghoddoussi's claim.[2]  (Dkts. #51 and #56).  The Association argues that defendants had a duty to defend and indemnify Mr. Ghoddoussi in the underlying lawsuit,

---

[1] The Association is the assignee of plaintiff Faramarz Ghoddoussi.

[2] The Court also briefly addresses below the Association's Motion for Summary Judgment regarding bad faith and Consumer Protection Act ("CPA") claims.  (Dkt. #60).

ORDER
PAGE - 1

defendants breached that duty to defend, and, therefore, Mr. Ghoddoussi is entitled to damages equal to the amount of the underlying settlement once it is approved.

Defendants move for summary judgment in their favor, arguing that the policy in question does not provide liability coverage for the allegations raised in the underlying lawsuit, and therefore there is no duty to defend. Specifically, defendants argue that the claims against Mr. Ghoddoussi in the underlying lawsuit are not for "property damage caused by an occurrence," and, if any such claims existed, they would fall within the exclusion for damage "expected or intended from the standpoint of the insured."

For the reasons set forth below, the Court agrees in part with defendants, GRANTS IN PART their motion for summary judgment, and DENIES the Association's motions for summary judgment.

## II. DISCUSSION.

**A. Background**

This action arises from a construction defect lawsuit proceeding in King County Superior Court. Far Northwest Development, LLC ("Far Northwest"), a plaintiff in this action, was the developer of a new construction condominium project known as the Somerset Village Townhomes Condominium, a 14-unit condominium located in Bellevue, WA. Faramarz Ghoddoussi, also a plaintiff in this action, was the managing member of Far Northwest, and served as an officer and director of the Somerset Village Townhomes Homeowners' Association ("Association") from the date of formation on April 13, 2001, until January 30, 2002. Construction was completed in early 2001. The first unit was sold on May 2, 2001, and the balance of the units were sold between May 25, 2001 and July 15, 2002. All of the units were sold by Far Northwest.

In April 2001, defendant Westport issued a package insurance policy to "Somerset Village Townhomes Condominium," with a policy period of April 20, 2001 through April 20, 2002. The policy contained property coverage and general liability insurance coverage. The general liability coverage is at issue on this motion. The general liability coverage portion of the policy included

coverage for directors and executive officers, but only with respect to their duties as such. The parties agree that plaintiff Ghoddoussi is an insured under the policy.

On July 29, 2005, the Association filed a First Amended Complaint in King County Superior Court, alleging, *inter alia*, that Mr. Ghoddoussi breached his fiduciary duties by failing to maintain the common elements of the Somerset Village Townhomes Condominium during the time that he acted as a director and officer of the Association. The Amended Complaint also alleges physical damage to the condominium and its common elements.

After the lawsuit was filed, Mr. Ghoddoussi tendered claims for defense and indemnity in the underlying lawsuit to Westport. Westport denied the tender, asserting that the owned property exclusion barred coverage for the Association's claims against Mr. Ghoddoussi.

Plaintiffs then brought the instant action seeking a declaratory judgment regarding the obligations of the insurers to contribute to the defense and indemnity obligations in the underlying action. Cross-motions for summary judgment followed, and the Court subsequently determined that the owned property exclusion contained in the liability insurance policy issued by defendant Westport does not bar coverage for the claims asserted against Mr. Ghoddoussi in his capacity as manager and director of the Association in the underlying state construction defect action. The parties have now brought cross-motions for summary judgment on other grounds, as noted above.

**B. Summary Judgment Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477

U.S. at 257. Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc*., 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under governing law. *See id.* In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc*., 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747). Furthermore, conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345 (9th Cir. 1995). Similarly, hearsay evidence may not be considered in deciding whether material facts are at issue in summary judgment motions. *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F. 2d 665, 667 (9th Cir. 1980).

Here, the parties appear to agree that there are no genuine issues of material fact, and this matter should be resolved on these cross-motions for summary judgment.

**C. Applicable Law**

The instant case was brought in this Court based on diversity of the parties. (Dkt. #1). Accordingly, the issues presented are governed by Washington State law. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941); *Insurance Co. N. Am. v. Federal Express Corp.*, 189 F.3d 914, 919 (9th Cir. 1999) (explaining that in an ordinary diversity case, federal courts apply the substantive law of the forum in which the court is located).

In Washington, interpretation of an insurance contract is a matter of law, which requires the Court to consider the contract in its entirety and to give effect to each policy provision. *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 423-24 (1997); *PUD No. 1 of Klickitat County v. International Ins. Co.*, 124 Wn.2d 789, 881 (1994). In addition, insurance contracts are interpreted using ordinary

ORDER
PAGE - 4

contract interpretation principles. Generally, insurance contracts are interpreted in the manner understood by the average purchaser of the policy. *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877 (1990); *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 480 (1984). Thus, terms contained in insurance policy are given their plain, ordinary, and popular meanings.

A policy is ambiguous only if its provisions are susceptible to two different interpretations, both of which are reasonable. *Allstate Ins.*, 131 Wn.2d at 424; *McDonald Industries v. Rollins Leasing Corp.*, 95 Wash 2d 909, 913 (1981). In determining whether an ambiguity exists, the Court views the language the way it would be read by the average insurance purchaser, and will give any undefined terms their ordinary meanings, not technical, legal meanings. *Allstate Ins.*, 131 Wn.2d at 424. Ambiguous provisions are generally construed against the insurer; however, "[a]n ambiguity will not be read into a contract where it can be reasonably avoided by reading the contract as a whole." *Universal/Land Const. Co. v. City of Spokane*, 49 Wn. App. 634, 637 (1987).

If the plain language of the policy does not provide coverage, courts will not rewrite the policy to do so. *Grange Ins. Co. v. Brosseau*, 113 Wn.2d 91, 100 (1989). Further, exclusions in a policy are to be construed against the insurer. *West Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 4 Wn. App. 221 (1971). However, courts will consider exclusions in insurance policies in light of the purpose for which they are inserted. *See Olds-Olympic, Inc. v. Commercial Union Ins. Co.*, 129 Wn.2d 464, 478-79 (1996).

**D. Duty to Defend and Duty to Indemnify**

The Association has moved for summary judgment asking the Court to find that defendants have a duty to defend and indemnify Mr. Ghoddoussi from the claims in the underlying construction defect suit. Washington State law is clear that the interpretation of policy language contained in an insurance contract is a question of law. *See e.g.*, *Butzberger v. Foster*, 151 Wn.2d 396, 401 (2004); *Public Utility Dist. No. 1 of Klickitat County v. International Ins.* Co., 124 Wn.2d 787, 797 (1994); *State Farm General Ins. Co. v. Emerson*, 102 Wn.2d 477, 480 (1984). Where there are no material

1  facts in dispute, interpretation of the language at issue is appropriately decided on summary judgment.

2  *See e.g.*, *American Bankers Ins. v. N.W. Nat. Ins.*, 198 F.3d 1332 (11th Cir. 1999).

3        An insurer has a duty to defend if the Complaint, construed liberally, alleges facts which, if

4  proven, impose liability within the policy's coverage. *Unigard Ins. Co. v. Leven*, 97 Wn. App. 417,

5  425 (1999). If the alleged claims are clearly not covered, then the insurer has no duty to defend. *Cle*

6  *Elum Bowl, Inc. v. N. Pac. Ins. Co.*, 96 Wn. App. 698, 703 (1999). An ambiguous Complaint is to be

7  liberally construed in favor of triggering the duty to defend. *Truck Ins. Exch. v. Vanport Homes, Inc.*,

8  147 Wn.2d 751, 760 (2002). If the insurer is unsure of its obligation to defend, it may defend under a

9  reservation of rights, while seeking a declaratory judgment that it has no duty to defend. *Id.* at 761.

10  In this case, defendants took such action. Accordingly, the Court must determine whether the

11  underlying complaint alleges facts which could impose liability within the policy's coverage, and

12  whether such liability was within the scope of coverage.[3]

13        In the instant case, the parties agree that the general liability portion of the policy is implicated.

14  The policy states:

### VI. GENERAL LIABILITY COVERAGE SECTION

> We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply.
>
> This insurance applies only to . . . "property damage" . . . caused by an "occurrence" which takes place . . . during the "policy period" in the "coverage territory."

(Dkt. #20, Ghoddoussi Dec., Ex. B at 20) (emphasis in original).

The policy defines the term "property damage" as "[p]hysical injury to tangible property,

---

[3] The duty to indemnify is a separate obligation. *N.H. Indem. Co., Inc. v. Budget Rent-A-Car Sys., Inc.*, 148 Wn.2d 929, 938 (2003) (citing *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 690 (2000)). "The duty to indemnify hinges on the insured's actual liability to the claimant and actual coverage under the policy." *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64 (2000)). The duty to defend is broader than the duty to indemnify. *Truck Ins. Exch.*, 147 Wn.2d at 760.

ORDER
PAGE - 6

including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." (Dkt. #20, Ghoddoussi Dec., Ex. B at 56). The policy defines the term "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Dkt. #20, Ghoddoussi Dec., Ex. B at 54).

Defendants agree that Mr. Ghoddoussi is an insured under the general liability portion of the policy, but only with respect to his duties as an officer and director of the Association.

In the underlying Complaint, the plaintiffs in that action allege a single count of breach of fiduciary duty against Mr. Ghoddoussi for his acts as a director of the Association's board as follows:

> 28. For a period of time, the Developer Defendants controlled the Association's Board of Directors and, therefore, had the duty to cause the Association to act in a reasonable and prudent manner and in the best interests of the Association and its unit owner members. The Developer Defendants breached their fiduciary duty by acts or omissions, including, but not limited to, the following: a) negligently failing to disclose the existence of defects within the Project to the Association which they knew or should have known about; b) negligently failing to conduct a reasonable inspection of the quality of the construction of the Project to determine the existence and scope of any defective construction; c) negligently failing to identify and correct the defects and damage to the Project that they knew or should have known about or to fund the cost of the repair and remediation of the same; d) negligently failing to repair and maintain the Project; and e) negligently failing to provide adequate reserves in the Association's budget for the correction of defective conditions and the repair and/or replacement of the defective portions of the Project, any and all of which has caused property damage at the Project.

(Dkt. #52, Ex. A at 7).

With respect to defendants' duty to defend, this Court finds that defendants had such a duty. The plaintiffs in the underlying action alleged that property damage caused by an occurrence took place. *See Allstate Ins. Co. v. Bowen*, 121 Wn. App. 879, 886 (2004). As the court explained in *Bowen*, an occurrence is an act or omission that causes an injury, and the policy definition of an occurrence as an accident, did not require a contrary result. *Id.* at 885-86. The same holds true in this case. The plaintiffs in the underlying action allege that Mr. Ghoddoussi negligently failed to perform a number of acts. "Thus, the question of whether [those negligent failures] constituted an accident was ambiguous and unresolved from the language of the complaint." *Id.* at 886. Therefore, the Court

ORDER
PAGE - 7

finds that the Complaint was sufficient to trigger defendants' duty to defend, which defendants offered in the underlying action, but Mr. Ghoddoussi ultimately rejected.

However, the Court finds there is no duty to indemnify under the policy. Washington courts, along with other courts addressing situations similar to the instant one, have made clear that a causal connection must exist between the occurrence and the physical damage to tangible property. With respect to Mr. Ghoddousi's acts as a director or officer, the underlying Complaint clearly alleges breach of fiduciary duty. While the Complaint also alleges that Mr. Ghoddoussi as a developer is responsible for water intrusion which resulted from a number of construction defects, this is not the damage for which Mr. Ghoddoussi, as a director/officer, is legally liable. Indeed, Mr. Ghoddoussi's is liable for his failure to disclose, failure to investigate, failure to maintain and repair the condominiums, and failure to provide adequate reserves. The Court need not determine whether those failures constitute "occurrences" under the policy, because even assuming they do, those failures did not cause the property damage alleged in the Complaint.

In *Bowen*, the Washington Court of Appeals held that claims against a seller for her failure to disclose, or, as the court characterized it, her misrepresentation, were not covered by the policy. The court explained:

> The property damage did not arise from the alleged misrepresentation. The property damage arose independently of any alleged misrepresentation. The property damage arose from roots, the degradation of the pipe material, or the placing into the sewer system of inappropriate items. The property damage or loss of use did not "arise from" the representations in the real estate form.

*Bowen*, 121 Wn. App. at 887.

Likewise, the cases relied upon in *Bowen* are instructive, as those cases examined policies with language identical to that of the policy at issue here. The court noted:

> In *Bush v. Shoemaker-Beal*, the purchasers of a home sued the buyer for negligent misrepresentation concerning termite damage. The policy covered property damage caused by an occurrence. The Kansas Court of Appeals concluded that there was no coverage under the homeowners' policy because the termite damage was not caused by the negligent misrepresentation but by the termites.

ORDER
PAGE - 8

> The reasoning in *State Farm Lloyds v. Kessler*, a Texas case, is also instructive. The court noted that any alleged misrepresentation concerning drainage and foundation problems was not the cause of those problems. The problems existed before any alleged misrepresentation. The court concluded that economic damages arose because the purchaser did not get the property they bargained for because of the misrepresentation. The misrepresentation did not cause the physical property damage, but economic damages only.

*Bowen*, 121 Wn. App. at 887-88 (citations omitted).

The Court finds that reasoning persuasive. Accordingly, the Court finds that the claim against Mr. Ghoddoussi in his capacity as a director/officer, as set forth in the underlying Complaint, is not one for property damage caused by an occurrence. Any "legal liability" Mr. Ghoddoussi may have to the Association is not because of the alleged construction defects, but because of his subsequent breaches of fiduciary duty. As a result, there is no duty on defendants to indemnify Mr. Ghoddoussi.

**E.  Breach of Duty to Defend**

The Association also argues that because defendants breached their duty to defend, defendants are liable for the approved amount of Mr. Ghoddoussi's settlement of the claims against him in the underlying action. However, the Court finds that argument misconstrues defendants' liability. In Washington:

> The general rule regarding damages for an insurer's breach of contract is that the insured must be put in as good a position as he or she would have been had the contract not been breached. In the failure-to-defend context, recoverable damages include: (1) the amount of expenses, including reasonable attorney fees the insured incurred defending the underlying action, and (2) the amount of the judgment entered against the insured. In *Greer*, we stated an insurance company that wrongfully refuses to defend an insured's claim is liable for the amount of the judgment entered *provided the act creating liability is a covered event and provided the amount of the judgment is within the limits of the policy*.

*Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 561 (1998) (citations omitted0 (emphasis added). Here, the Court has already determined that the claims against Mr. Ghoddoussi in his capacity as an officer/director are not covered under the policy. Accordingly, defendants are not liable for the underlying settlement amount.

The Court recognizes that there are exceptions for an insurer's bad faith breach of its duty to

ORDER
PAGE - 9

defend. *Truck Ins. Exch.*, 147 Wn.2d at 759-60; *Kirk*, 134 Wn.2d at 564-65. However, the Association has failed to raise any allegation of bad faith in the instant motions for summary judgment. In addition, the Association's reliance on *Nautilus, Inc. v. Transamerica Title Ins. Co. of WA*, 13 Wn. App. 345 (1975) is misplaced. In that case, the court noted, "[w]hen an insurer refuses to defend when it is obligated to do so, the insured may recover the total amount paid in effecting a reasonable settlement together with costs and attorney fees. A bad faith refusal is not requisite to such recovery." *Nautilus*, 13 Wn. App. 352. However, the court made that determination after it had explicitly found that the duty to defend existed because the claims of the underlying action were clearly covered by the insurance policy at issue. *Id.* at 349-50. Here, the claims are not covered by the policy. Further, in contrast to the insurer in *Nautilus*, who had twice refused the defense of the action, defendants in this case did eventually offer to defend Mr. Ghoddoussi under a full reservation of rights, which Mr. Ghoddoussi ultimately rejected. Accordingly, the Court does not find the Association's argument persuasive.

To the extent that plaintiffs attempt to raise their bad faith claims in their separate pending motion for summary judgment, the Court finds that no bad faith occurred, as further explained in section F of this Order. Therefore, defendants are not subject to any bad faith exception to the general rule.

**F. Bad Faith and Consumer Protection Claims**

In a separate Motion for Summary Judgment currently pending before this Court, the Association argues that defendants denied its duty to defend in bad faith and violated Washington's Consumer Protection Act ("CPA"). (Dkt. #60). The Court denies the motion for the substantive reasons below. However, as an initial matter, the Court notes that this motion also suffers from a number of procedural defects. First, this motion for summary judgment is impermissibly overlength. Local Rule CR7(e)(3) states that motions for summary judgment shall not exceed 24 pages in length. The Association filed a 26-page motion in violation of that Rule, and did not otherwise seek

ORDER
PAGE - 10

permission to file an overlength motion. Further, it appears that the motion has been filed in an attempt to avoid the Local Rules governing page length entirely. As this Court has explained in other cases, parties may not bifurcate claims or issues simply to circumvent the page limitations as stated in the Local Rules. *See, e.g., Valley Ins. Co. v. Wellington*, C05-1886RSM.[4] In addition, the motion was not properly noted pursuant to Local Rule 7(b)(1), which requires that the noting date be set forth immediately below the title of the motion. Although the filer apparently noted it electronically for the correct date, no such notice was provided on the face of the motion.

Despite these deficiencies, the Court addresses the Association's substantive bad faith and CPA arguments for the sake of judicial economy. Whether a particular action gives rise to a Consumer Protection Act violation is a question of law for the Court. *Leingang v. Pierce County Medical Bureau, Inc.*, 131 Wn.2d 133, 150 (1997). In order to maintain a bad faith claim, plaintiff must show that the claim denial was "unreasonable, frivolous, untenable or unfounded." *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 484 (2003); *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 560 (1998); *Leingang*, *supra*, at 155-56. Additionally, Washington courts have a long history of rejecting both bad faith and CPA claims when "there is a debatable question regarding coverage for the loss." *See Capelouto v. Vallety Forge Ins. Co.*, 96 Wn. App. 7, 22 (1999); *see also Keller v. Allstate Ins. Co.*, 81 Wn. App. 624, 633 (1996).

As the Court has already determined, the claims against Mr. Ghoddoussi in his capacity as a director/officer are not covered under the policy at issue in this case. While, the Court also previously determined that the owned property exclusion did not apply, that was not the only reason that defendants denied Mr. Ghoddousi's claim. Therefore, it was not unreasonable or unfounded for defendant to rely, in part, on that exclusion. Furthermore, after the Court found that the exclusion did not bar coverage, defendants reevaluated their position and offered a full reservation of rights defense

---

[4] The Association is certainly aware of the *Valley Insurance* case, as evidenced by citations in its motion for summary judgment to other Orders issued by the Court in that case.

ORDER
PAGE - 11

on the director's act claim.  Mr. Ghoddoussi chose to reject that defense, and proceeded to settle the underlying action.  Finally, plaintiff's bad faith and CPA claims were premised on this Court's ruling that defendant wrongfully denied insurance coverage; however, the Court did not so rule.  Accordingly, plaintiffs' bad faith and CPA claims are hereby dismissed.

### III. CONCLUSION

Having reviewed the parties' motions for summary judgment, the responses and replies thereto, the declarations and exhibits in support of those briefs, and the remainder of the record, the Court hereby ORDERS:

(1) The Association's Motion for Summary Judgment regarding defendants' liability for the underlying settlement (Dkt. #51) is GRANTED IN PART and DENIED IN PART.  The Court finds that defendants had a duty to defend Mr. Ghoddoussi in the underlying construction defect lawsuit for the reasons discussed above.

(2) The Association's Motion for Summary Judgment regarding bad faith and CPA claims (Dkt. #60) is DENIED for the reasons discussed above, and those claims are now DISMISSED.

(3) Defendant's Cross-Motion for Summary Judgment (Dkt. #56) is GRANTED.  For the reasons set forth above, the Court finds that the claims against Mr. Ghoddoussi in his capacity as an officer/director do not trigger coverage under the policy at issue in this case, and therefore his claim to indemnity is DISMISSED.

(4) This case is now CLOSED.

(5) The Clerk shall forward a copy of this Order to all counsel of record.

DATED this _16_ day of April, 2007.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 12