UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FAR NORTHWEST DEVELOPMENT
CO., LLC, and FARAMARZ
GHODDOUSSI,

    Plaintiffs,

    v.

COMMUNITY ASSOCIATION OF
UNDERWRITERS OF AMERICA, INC.,
*et al.*,

    Defendants.

CASE NO. C05-2134 RSM

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

## **I. INTRODUCTION**

This matter comes before the Court on Defendants' Motion for Summary Judgment. (Dkt. #82). In this insurance coverage dispute, Defendants argue that they do not have a duty to defend or indemnify under the policy at issue. Defendants specifically contend that the insured's conduct did not constitute an "occurrence" that is covered by the policy. Alternatively, Defendants argue that if coverage exists, the burden is on the insured to show how much of a previous settlement involving the insured should be allocable to this action.

Plaintiffs respond that there is no evidence that the insured subjectively expected or intended any property damage to occur, and therefore they assert that the insured's conduct is coverable under the policy. Plaintiffs also argue that Defendants acted in bad faith in refusing

ORDER
PAGE - 1

to defend or indemnify its insured, thereby making them responsible for the full amount of the settlement.

For the reasons set forth below, the Court agrees with Defendants, and GRANTS Defendants' motion in its entirety.

## **II. DISCUSSION**

### **A. Background**

The instant action arises from a construction defect proceeding in King County Superior Court. In that case, Somerset Village Townhomes Homeowners' Association (the "Association") alleged that Faramarz Ghoddoussi, a Plaintiff in this action, breached his fiduciary duties by failing to maintain the common elements of the Somerset Village Townhomes Condominium (the "Somerset"). The Somerset is a 14-unit condominium complex in Bellevue, WA, that was managed by Mr. Ghoddoussi from April 13, 2001 through January 30, 2002. The Association claimed that Mr. Ghoddoussi and Far Northwest Development, LLC ("Far Northwest"), the developer of the Somerset Village Townhomes Condominium, failed to adequately investigate defects during the development phase, thereby resulting in significant physical damage to the condominiums.

After the lawsuit was filed, Mr. Ghoddoussi and Far Northwest tendered claims for defense and indemnity to their insurer, Westport Insurance Corporation and Community Association Underwriters of America, Inc. (collectively "CAU"). CAU denied the tender, asserting that an owned property exclusion barred coverage for the Association's claims against Mr. Ghodduossi and Far Northwest.

Mr. Ghoddoussi and Far Northwest (hereinafter "Plaintiffs") subsequently filed the instant action on December 28, 2005. They sought a declaratory judgment that CAU had a duty to defend and indemnify in the underlying state court proceeding based on the insurance policy at issue. They also brought bad faith and Washington Consumer Protection Act ("CPA") claims.

Importantly, the policy at-issue provides that "[t]his insurance applies only to . . . "property damage" . . . caused by an "occurrence." (Dkt. #20, Decl. of Ghoddoussi, Ex. B, §

VI). The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.*, § XXVII (51)). The policy further excludes from coverage "'property damage' expected or intended from the standpoint of the insured." (*Id.*, § X (E)).

The Court entertained several cross-motions for summary judgment, and ultimately held that as a threshold matter, the Association's claims against Mr. Ghoddoussi in his capacity as an officer of the Association did not trigger coverage under the policy. (Dkt. #70). The Court based its holding on the grounds that Plaintiffs could not establish a causal connection between the occurrence and the physical damage to tangible property. Therefore the Court held that CAU did not have a duty to indemnify. The Court also dismissed Plaintiffs' bad faith and Washington CPA claims. Significantly, the Association and Mr. Ghoddoussi settled their claims for $1.3 million on October 13, 2006. (Dkt. #61, Decl. of Harper, ¶ 18).

The Association, as assignee of Mr. Ghoddoussi, appealed the Court's order to the Ninth Circuit. On October 22, 2008, the Ninth Circuit reversed this Court's summary judgment order and remanded the proceedings back to this Court. In its one-page order, the Ninth Circuit found that Mr. Ghoddoussi's acts, "as the sole officer and director of the Association, caused some of the property damage. As a result, his acts, if merely negligent, were covered under the policy." *Far Northwest Dev. Co. LLC v. Cmty. Ass'n Underwriters of Am., Inc.*, 297 Fed. Appx. 694, 695 (9th Cir. 2008).

CAU now brings the instant motion for summary judgment. CAU claims that Mr. Ghoddoussi's conduct, even if potentially causing some of the property damage to the condominiums as the Ninth Circuit found, was a breach of his fiduciary duties in his role as an officer of the Association. CAU further claims that breaches of fiduciary duty are not "occurrences" that are covered under the policy. CAU also argues that the property damage that gave rise to this lawsuit was expected or intended from the standpoint of Mr. Ghoddoussi. CAU argues in the alternative that if the Court determines that coverage exists, Plaintiffs bear the burden of proving what portion of the $1.3 million settlement Mr. Ghoddoussi entered

ORDER
PAGE - 3

into with the Association should be allocable to the covered damage. The Court now turns to the substance of the parties' arguments.

### B. Standard of Review

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. If the moving party meets its burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Cline v. Indus. Maint. Eng'g. v. Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000). Mere disagreement, or the bald assertion that a genuine issue of material fact exists, is insufficient to preclude summary judgment. *California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under governing law. *Id*. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny*, 969 F.2d at 747). Conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345 (9th Cir. 1995).

### C. Expected or Intended Loss

Notwithstanding CAU's argument that a breach of fiduciary duty is not an "occurrence" that is covered under the policy at issue, the Court finds that the loss in this case was "expected or intended" from the standpoint of Mr. Ghoddoussi, thereby precluding coverage.

It is well-settled in insurance law that "[t]o satisfy the 'occurrence' definition, and to come within the coverage provision, it must be established that the harm was unexpected or unintended. There is never coverage where the harm is expected or intended." *Queen City Farms, Inc. v. Central Nat. Ins. Co. of Omaha*, 126 Wash. 2d 50, 71 (1994).[1] Whether harm is expected or intended is based on a subjective standard from the viewpoint of the insured, rather than an objective one. *Id*. at 69. "In other words, property damage that is expected or intended by the insured does not warrant coverage." *Overton v. Consolidated Ins. Co.*, 145 Wash. 2d 417, 425 (2002) (citation omitted).

This standard does not suggest that courts should ignore all objective evidence. "Since proof of state of mind normally is indirect or circumstantial, even a subjective test must rely on facts from which an inference about the insured's state of mind must be drawn, such as the obviousness of already occurring harm." *Id*. (citing K. Abraham, *Environmental Liability Insurance Law* 134 (1991)). In addition, the insured need not have previously known about the harm. *See, e.g.*, *City of Redmond v. Hartford Acc. & Indem. Ins. Co.*, 88 Wn.App. 1, 8 (1997) ("Expectation . . . is forward-looking and does not require that the damage have already occurred."). The burden of proof is on the insured "to establish that subjectively injury or damage was neither expected nor intended." *Queen City*, 126 Wash. 2d at 72.

In the instant case, Mr. Ghoddoussi cannot deny that the policy excludes from coverage any "'property damage' expected or intended from the standpoint of the insured." (Dkt. #20, Decl. of Ghoddoussi, § X (E)). He also acknowledges that he was aware of the many problems that arose during the development of the Somerset. Nevertheless, he claims that he falls outside the exclusionary language of the policy and is entitled to coverage because he was not an intentional wrongdoer. He contends that he was unaware of his fiduciary duties, and he was inexperienced in the construction industry. Thus, he argues that he did not have the subjective intent to cause any property damage.

---

[1] The Court has jurisdiction based on diversity of citizenship, and the parties do not dispute that the law of the forum in which the court is located applies. Accordingly, the issues presented here are governed by Washington State law. *See Insurance Co. N. Am. v. Federal Express Corp.*, 189 F.3d 914, 919 (9th Cir. 1999).

ORDER
PAGE - 5

However, self-serving testimony that an insured did not subjectively intend to cause damage does not address "the question of whether [the insured] *had reason to expect that damage*." *City of Redmond*, 88 Wn.App. at 9, n.5 (emphasis added). This is especially true when the self-serving testimony is not supported by evidence. Here, there is overwhelming evidence directly from Mr. Ghoddoussi that suggests that he was not simply naïve or negligent. Rather, it is perfectly evident that he was fully aware of the problems that arose during the development of the Somerset. While exhaustive, the Court finds it worthwhile to refer to each instance where Mr. Ghoddoussi acknowledges that he was aware of substantial problems during the development phase. For instance, Mr. Ghoddoussi claims that:

> During the time that I served on the Association's board of directors I became aware of a number of problems with the quality of construction by virtue of communications from unit owners. While I took steps to address the claims of specific unit owners, *it did not occur to me to take further steps to determine whether these conditions existed at other units, nor did I consider that I had an obligation to inform the Association of the presence of those defects so that it might undertake its own wider investigation.*

(Decl. of Henry, Dkt. #57 at 6) (emphasis added).

The evidence also indicates that Mr. Ghoddoussi retained Steinvall Construction Co. ("Steinvall") as the general contractor for the Somerset project, and that Mr. Ghoddoussi was fully aware of Steinvall's failures. Mr. Ghoddoussi states that:

> During construction, I became aware of many problems resulting from Steinvall's failure to supervise the subcontractors . . . The issues related to Steinvall's supervisory failings included [the following] . . . The subcontractors didn't have access to [Steinvall] for consultations or to have their questions answered . . . After [Steinvall's superintendent] was fired, mistakes and failures to supervise and provide the necessary labor for the project continued . . . Steinvall Construction [failed] to supervise the framing, drainage utility Subcontractors, and other Subcontractors . . .The walls were not framed [and] plumbed after the framers were paid . . .

(Dkt. #62, Decl. of Ghoddoussi, ¶ 4).

Furthermore, Mr. Ghoddoussi indicates that:

> I frequently saw mistakes in installation of siding and framing during the course of construction. However, every time I saw a mistake, I made sure the problem was corrected. Nevertheless, *because I was not on site all of the time, I believed it was possible that there were other instances of poor workmanship at the Project that I had not found and corrected.*

(*Id*., ¶ 5) (emphasis added).

ORDER
PAGE - 6

Lastly, Mr. Ghoddoussi tellingly reveals that:

> I did not intend to cause the Association or its owners any harm by failing to investigate. However, I had lost more than $300,000 in profit on the Project, had over one million dollars in cost overruns, and was afraid of defaulting on the bank loan, *so I was not eager to go looking for problems and additional repair expenses.*

(*Id*., ¶ 8) (emphasis added).

Therefore Mr. Ghoddoussi's attempt to fit within the subjective standard established by *Queen City* is unavailing in light of the undisputable facts of this case. Mr. Ghoddoussi cannot simply argue that because he was inexperienced in the construction industry, and that he was unaware of his fiduciary duty to investigate defects, he never subjectively intended to cause harm. Instead, it seems quite clear that Mr. Ghoddoussi had a thorough understanding of the problems that arose during the development phase, but chose to ignore them in order to promote his own monetary interests. It is worth reiterating that the Washington Supreme Court has established that "even a subjective test must rely on facts from which an inference about the insured's state of mind must be drawn, such as the obviousness of already occurring harm." *Queen City*, 126 Wash. 2d at 69. Here, there are no facts that support Mr. Ghoddousi's subjective state of mind. Adopting Mr. Ghoddoussi's argument would allow any insured to make a naked claim that he or she never intended to cause harm during the policy period to survive summary judgment. *Queen City* certainly never intended the subjective standard to reach so far.

Simply put, the harm was obvious in this case. Mr. Ghoddoussi's legal argument that he was simply "negligent" is flatly rejected. The damage was unequivocally "expected or intended" from the standpoint of the insured, thereby precluding coverage.

### D. The Parties' Remaining Arguments

To the extent that the parties dispute whether the Ninth Circuit affirmed this Court's dismissal of Mr. Ghoddoussi's and Far Northwest bad faith and Washington CPA claims, the Court finds that the issue is moot. No bad faith or Washington CPA claim exists when "there is a debatable question regarding coverage for the loss." *Capeluto v. Valley Forge Ins. Co.*, 98 Wn.App. 7, 22 (1999). Here, not only is there a debatable question, the Court has found

that the insurer was justified in denying coverage. Accordingly, Plaintiffs cannot maintain bad faith or Washington CPA claims, irrespective of the Ninth Circuit's silence on this issue.

Similarly, because the Court has found that no coverage exists, the Court finds it unnecessary to address the parties' arguments with respect to allocation of the settlement.

### III. CONCLUSION

Having reviewed the relevant pleadings, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendants' Motion for Summary Judgment (Dkt. #82) is GRANTED. The case is now CLOSED.

(2) The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this 22nd day of April, 2009.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE